UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JASON CHRISTIAN WEBB WALKER, <br> *Plaintiff*, <br> <br> v. <br> <br> MARTIN O'MALLEY, <br> Commissioner of Social Security <br> Administration, <br> *Defendant*. | Case No: 1:23-cv-00085 <br> <br> Judge Christopher H. Steger |

## MEMORANDUM OPINION

**I.   Introduction**

Plaintiff Jason Christian Webb Walker seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from his denial of disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner") under Title II of the Act, 42 U.S.C. §§ 401-34. [*See* Doc. 1]. The parties consented to the entry of final judgment by the undersigned United States Magistrate Judge, under 28 U.S.C. § 636(c), with an appeal to the Court of Appeals for the Sixth Circuit. [Doc. 10].

Each party has filed a brief seeking judgment in their favor pursuant to Rule 5 of the Federal Rules of Civil Procedure Supplemental Rules for Social Security [Docs. 15, 19]. Plaintiff also filed a reply brief pursuant to Rule 8 of the Supplemental Rules. [Doc. 20]. For reasons that follow, Plaintiff's request for relief [Docs. 15, 20] will be **DENIED**, the Commissioner's request for relief [Doc. 19] will be **GRANTED**, and judgment will be entered **AFFIRMING** the Commissioner's decision.

## II. Procedural History

On May 29, 2020, Plaintiff applied for disability insurance benefits, alleging disability as of August 1, 2017. (Tr. 11). Plaintiff's claims were denied initially as well as on reconsideration. *Id.* As a result, Plaintiff requested a hearing before an administrative law judge. *Id.*

Due to COVID-19, a telephonic hearing was held on February 15, 2022, that included Plaintiff's attorney. *Id.* Administrative Law Judge Kristie Luffman-Minor ("ALJ") heard testimony from Plaintiff and a vocational expert ("VE"). (Tr. 33-54). The ALJ then rendered her decision on March 2, 2022, finding that Plaintiff was not under a "disability" as defined by the Act. (Tr. 21).

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial; but that request was denied. (Tr. 1). Exhausting his administrative remedies, Plaintiff then filed his Complaint [Doc. 1] on April 11, 2023, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing briefs and this matter is ripe for adjudication.

## III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

2. The claimant has not engaged in substantial gainful activity since August 1, 2017, the alleged onset date. (20 C.F.R. § 404.1571 *et seq.*)

3. The claimant has the following severe impairments: bipolar disorder, panic disorder, attention deficit hyperactivity disorder (ADHD), and substance addiction disorders (20 C.F.R. § 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can understand, remember, and carry out simple instruction; can understand and learn terms, instructions, and procedures and use reason and judgment to make work-related decisions typically required for simple routine work; can have no contact with the general public; can have occasional contact with co-workers and supervisors; can perform no work in team formats; would work better with things, rather than people; can deal with changes in a routine work setting on an infrequent and gradual basis.

6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).

7. The claimant was born on March 31, 1974, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. § 404.1563).

8. The claimant has at least a high school education (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41, 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569a).

11. The claimant has not been under a disability, as defined by the Social Security Act, from August 1, 2017, through the date of this decision (20 C.F.R. § 404.1520(g)).

12. The claimant's substance abuse is not a contributing factor material to the determination of disability (20 C.F.R. § 404.1535).

(Tr. at 13-21).

## IV. Standard of Review

This case involves an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if he: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1).

The determination of disability is an administrative decision. To establish a disability, a plaintiff must show that he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, he is not disabled; (2) if a claimant does not have a severe impairment, he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment, he is disabled; (4) if the claimant is capable of returning to work he has done in the past, he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, he is not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering his age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986). The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky*, 35 F.3d at 1035; *Crisp*, 790 F.2d 450 n.4.

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United*

*States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

## V. Analysis

Plaintiff claims that the ALJ's RFC: (1) failed to account for Plaintiff's moderate limitation in ability to concentrate, persist, or maintain pace; and (2) was not supported by any medical opinion evidence. The Court will address these arguments in order.

### A. Inadequate RFC Regarding Ability to Concentrate, Persist, or Maintain Pace

Plaintiff claims that the ALJ "included *no* mental restrictions which would account for Plaintiff's moderate restriction in ability to concentrate, persist [or][1] maintain pace." [Doc. 15 at 6 (emphasis added)]. He uses this premise to then build an argument that the ALJ was required to explain "conflicting findings regarding Plaintiff's mental functioning." [Doc. 20 at 3; Doc. 15 at 8].

The Court is unconvinced by Plaintiff's original premise as some such limitations were included in the RFC. At step three of the sequential evaluation process, the ALJ found, "With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation." (Tr. 15). In the RFC, the ALJ included the following nonexertional limitations:

1. Can understand, remember, and carry out simple and routine instructions;
2. Can understand and learn terms, instructions, and procedures and use reason and judgment to make work-related decisions typically required for simple and routine work;
3. Can have occasional contact with co-workers and supervisors;
4. Can perform no work in team formats;
5. Would work better with things, rather than people; and
6. Can deal with changes in a routine work setting on an infrequent and gradual basis.

---

[1] Plaintiff's quote erroneously states the relevant paragraph B criteria in the conjunctive, but the paragraph B criteria are stated in the disjunctive. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b).

(Tr. 15-16).

First, the Court notes that in the Sixth Circuit, a limitation to simple and routine instructions addresses a limitation in concentration, persistence, or pace. *See, e.g., Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625 (6th Cir. 2016); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010). Second, the Court finds that limiting interaction with co-workers and supervisors, no work in a team setting, working with things rather than people, and limiting changes to an infrequent and gradual basis all address a limitation in concentration, persistence, or pace to varying degrees. For instance, limiting interactions cuts down on distractions that would inhibit concentration, and limiting changes ensures that unfamiliarity with a task would rarely trigger or exacerbate issues with persistence or pace. However, the key question is whether these nonexertional limitations *adequately* address the *level* of Plaintiff's impairment—i.e., a moderate limitation in his ability to concentrate, persist, or maintain pace.

The Commissioner cites to *Smith-Johnson* and *Kepke* to support the claim that the ALJ adequately accounted for Plaintiff's limitation in concentration, persistence, or pace. [Doc. 19 at 6]. Both cases involved plaintiffs with moderate limitations in concentration, persistence, or maintaining pace. *Smith-Johnson*, 579 F. App'x at 436; *Kepke*, 636 F. App'x at 635. In *Smith-Johnson*, the plaintiff was limited to "simple, routine, repetitive tasks, but must avoid contact with the general public." 579 F. App'x at 436. In *Kepke*, the plaintiff was limited to "simple, unskilled work that does not require any complex written or verbal communication; must be employed in a low-stress job defined as requiring no more than occasional decision-making and no more than occasional changes in the work setting; and should have no more than occasional interaction with the public and with co-workers." 636 F. App'x at 628. In both cases, the Sixth Circuit found that

the RFC properly accounted for the plaintiffs' moderate limitations in concentration, persistence, or pace. *Smith-Johnson*, 579 F. App'x at 437; *Kepke*, 636 F. App'x at 635.

The following comparison chart of relevant RFC limitations in *Smith-Johnson*, *Kepke*, and this case is useful:

| *Smith-Johnson* | *Kepke* | This Case |
| --- | --- | --- |
| Can perform simple, routine, repetitive tasks | Is limited to simple, unskilled work . . . | Can understand, remember, and carry out simple and routine instructions |
| | . . . that does not require any complex written or verbal communication<br><br>Must be employed in a low-stress job defined as requiring no more than occasional decision-making . . . | Can understand and learn terms, instructions, and procedures and use reason and judgment to make work-related decisions typically required for simple and routine work |
| | . . . and no more than occasional changes in the work setting | Can deal with changes in a routine work setting on an infrequent and gradual basis |
| Must avoid contact with the general public | Should have no more than occasional interaction with the public and with co-workers | Can have occasional contact with co-workers and supervisors<br><br>Can perform no work in team formats |
| | | Would work better with things, rather than people |

*Smith-Johnson*, 579 F. App'x at 429; *Kepke*, 636 F. App'x at 628; (Tr. 15-16).

While the RFCs in *Smith-Johnson* and *Kepke* are not identical to the RFC here, the Court finds that they are sufficiently analogous to support the conclusion that the ALJ's RFC properly accounted for Plaintiff's moderate limitation in concentration, persistence, or pace.

Plaintiff attempts to distinguish *Kepke* because the plaintiff in that case "did not cite to any evidence in the record that provided for specific, concrete limitations in the ability to maintain concentration, persistence, or pace while doing simple, unskilled work." [Doc. 20 at 3]. However, Plaintiff points to no specific, concrete limitations opined in this case. [*See* Doc. 20 at 3-4].

The portion of *Kepke* cited by Plaintiff involves *Kepke's* explicit distinguishing of *Ealy*. *See* 636 F. App'x at 635. In *Ealy*, one of the plaintiff's medical examiner's gave specific limitations regarding concentrating, persisting, or maintaining pace that the Sixth Circuit ruled was not accounted for by the RFC's generic limitation to "simple, repetitive tasks and instructions in non-public work settings." *Ealy*, 594 F.3d at 516-17; *Kepke*, 636 F. App'x at 635; *Smith-Johnson*, 579 F. App'x at 436-37. The examiner "specifically limited Ealy's ability to sustain attention to complete simple repetitive tasks to two-hour segments over an eight-hour day where speed was not critical." 594 F.3d at 516 (cleaned up). *Smith-Johnson* explicitly distinguished *Ealy* on the same grounds because no specific, concrete limitations were opined there either. With no specific, concrete limitations opined in this case, the Court finds that *Smith-Johnson* and *Kepke* are appropriately comparable.

Plaintiff does point out that, in this case unlike in *Kepke*, the ALJ "rejected lesser restrictions by the State agency psychological consultants." The Court finds that this is a distinction without a difference. The more pertinent facts are that the ALJ found a moderate limitation in concentration, persistence, or pace and there were no concrete, specific limitations that needed to be accounted for in the RFC. Therefore, his combination of nonexertional limitations, which are sufficiently analogous to those found in *Smith-Johnson* and *Kepke*, reasonably accounted for Plaintiff's moderate limitation in concentration, persistence, or pace.

Therefore, the ALJ did not err as alleged because substantial evidence supports that her RFC appropriately accommodated Plaintiff's moderate limitation in ability to concentrate, persist, or maintain pace.

### B. Records Contradict the ALJ's Assertions

Plaintiff also claims that the ALJ erred because "[t]he record contained no medical opinion evidence supporting the RFC determination . . . ." [Doc. 15 at 12]. Plaintiff builds his case on *Browning v. Saul*, *Deskin v. Comm'r of Soc. Sec.*, and *Charles W. v. Comm'r of Soc. Sec.* to show that the ALJ improperly relied on her own interpretation of raw medical data. [Doc. 15 at 10-15; Doc. 20 at 6-7 (variously citing *Browning*, No. 2:20-CV-012-HBG, 2021 WL 1169370 (E.D. Tenn. Mar. 26, 2021), aff'd sub nom. Browning v. Comm'r of Soc. Sec., No. 21-5576, 2022 WL 2135560 (6th Cir. Mar. 15, 2022); *Deskin*, 605 F. Supp. 2d 908 (N.D. Ohio 2008); *Charles W.*, No. 322CV00312DJHCHL, 2023 WL 5011745 (W.D. Ky. July 5, 2023), report and recommendation adopted sub nom. Washburn v. Comm'r of Soc. Sec., No. 3:22-CV-312-DJH-CHL, 2023 WL 5003585 (W.D. Ky. Aug. 4, 2023))].

Plaintiff cites *Browning* for the proposition that "[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." [Doc. 15 at 12 (citing *Browning*, 2021 WL 1169370 at *9)]. Plaintiff claims the ALJ made such an improper interpretation in determining Plaintiff's mental limitations in the RFC. [Doc. 15 at 10-15].

Plaintiff next cites a quote from Deskin which states:

> As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing.

[Doc. 15 at 12 (citing *Deskin*, 605 F. Supp. 2d at 912)].

Plaintiff then states that the court "in *Charles W.*, noted that the "*Deskin* rule" narrowly applies in only two situations: '(1) where an ALJ made an RFC determination based on *no* medical source opinion; or (2) where an ALJ made an RFC determination

based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence.'" [Doc. 15 at 13 (citing *Charles W.*, 2023 WL 5011745 at *10)].

Plaintiff's argument is that the ALJ's RFC determination was based on no medical source opinion. [Doc. 15 at 10]. Thus, Plaintiff claims the ALJ improperly interpreted raw data in determining the RFC. *Id.*

The Court finds that *Charles W.* does not support Plaintiff's contention of error. In *Charles W.*, the court carefully explored the implications of the *Deskin* rule and found that it did not apply to the facts of that case. Thus, the court affirmed the ALJ's RFC, rejecting the plaintiff's claims "that the ALJ 'played doctor' and based his RFC on 'his lay interpretation of the evidence.'" 2023 WL 5011745 at *9-10. The court stated, "First, contrary to Claimant's position, an ALJ is not required to base his RFC on a medical opinion." *Id.* at *10 (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013); *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)). The court then stated that "the determination of a claimant's RFC is left to the ALJ. *Id.* (citing 20 C.F.R. §§ 416.945, 416.946).[2] Finally, the court outlined the same two situations noted above where *Deskin* could apply,[3] then found, "Neither of these scenarios exist in the instant case." *Id.*

The Court similarly finds that neither scenario exists in this case. Plaintiff has made no claim that a medical opinion in this case is outdated. Further, the record contains opinions from two State agency psychological consultants. (Tr. 60-61, 67-69). Therefore, as the court in *Charles W.* found, the non-mandatory *Deskin* rule does not even apply.

---

[2] The analogous regulations that apply to this case are found at 20 C.F.R. §§ 404.1545, 404.1546.
[3] Though some District Courts in the Sixth Circuit have chosen to apply *Deskin*, Plaintiff cites to no cases showing that the *Deskin* rule is endorsed by any mandatory authority.

Plaintiff wants the Court to find that since the ALJ found the two State agency psychological opinions to be unpersuasive, the RFC opinion was based on no medical opinion. [*See* Doc. 15 at 14]. The Court declines to adopt this viewpoint. First, as noted in *Browning*, the Sixth Circuit rejected a similar argument in *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). *Browning*, 2021 WL 1169370 at *9. In *Mokbel-Aljahmi*, the plaintiff claimed that "once the ALJ decided to give no weight to the physicians' opinions regarding his ability to work, the ALJ was required to get the opinion of another physician before setting the residual functional capacity." 732 F. App'x at 401. The Sixth Circuit responded, "We disagree," then affirmed the RFC because "[t]he ALJ undertook a laborious evaluation of the medical record when determining the residual functional capacity, and substantial evidence supports the ALJ's conclusions." *Id.* at 401-02.

Additionally, the ALJ here found that the record evidence reflected *greater* impairments.[4] When the ALJ found the two psychological opinions to be unpersuasive, she found four severe impairments instead of none, and she upgraded the opined "mild" impairments to "moderate" impairments for all four paragraph B criteria. (Tr. 18). The ALJ supported her conclusions with well-reasoned analysis. Additionally, while she did not regurgitate all the same details previously covered in the paragraph B analysis at step three, the ALJ made it clear that her step three analysis was incorporated into the RFC assessment. (Tr. 15, 18).

Plaintiff's claim of error in this regard presents a contradictory scenario. If the ALJ had found the two State agency psychological opinions to be persuasive, then Plaintiff would have received lesser RFC protections through lesser impairments, but there would be no "error." But since the ALJ carefully weighed all the evidence in the record and found the opinions to fall short

---

[4] These greater impairments were not *de minimis*—they were numerous and significant.

of Plaintiff's true limitations, she "erroneously" determined the RFC.

In addition to finding that the *Deskin* rule does not apply, the Court declines to follow the rule for two reasons: (1) the contradictory scenario discussed above presented by the ALJ's finding of greater protections for Plaintiff; and (2) as reflected in her detailed and comprehensive opinion, the ALJ's careful consideration of the entire record in determining the RFC.

In *Reinartz*, the Sixth Circuit rejected a claim that the ALJ "made 'independent findings' about [the claimant's] ability to work" in a case that also centered on a moderate limitation in concentration, persistence, or pace. *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020). Instead, the Sixth Circuit said, "An ALJ must consider 'all the relevant evidence in the record'—medical and non-medical alike—to determine a claimant's work capacity." *Id.*

In this case, the ALJ thoroughly and accurately considered all of the mental impairment evidence in the record—including Plaintiff's mental health diagnoses, the two State agency psychological opinions, notes from Plaintiff's mental health treatment, Plaintiff's hearing testimony, Plaintiff's alleged symptoms, Plaintiff's activities of daily living, and more—in making her RFC determination. (*See* Tr. 13-19). Here, like in *Mokbel-Aljahmi*, "[t]he ALJ undertook a laborious evaluation of the medical record when determining the residual functional capacity, and substantial evidence supports the ALJ's conclusions." 32 F. App'x at 402.

Thus, the ALJ did not err regarding Plaintiff's mental impairments in determining the RFC.

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's request for relief [Docs. 15, 20] will be **DENIED**, the Commissioner's request for relief [Doc. 19] will be **GRANTED**, and the decision of the ALJ is **AFFIRMED**. Judgment will be entered in favor of the Commissioner.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE